IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| In re: | : | CHAPTER 11 |
| --- | --- | --- |
| U.S. ACQUISITIONS & OIL, INC., | : | NO. |
| Debtor. | : | |

| In re: | : | CHAPTER 11 |
| --- | --- | --- |
| DR. R. C. SAMANTA ROY INSTITUTE OF SCIENCE & TECHNOLOGY, INC., | : | NO. |
| Debtor. | : | |

| In re: | : | CHAPTER |
| --- | --- | --- |
| MIDWEST OIL OF WISCONSIN, LLC, | : | NO. |
| Debtor. | : | |

| In re: | : | CHAPTER 11 |
| --- | --- | --- |
| MIDWEST OIL OF SHAWANO, LLC, | : | NO. |
| Debtor. | : | |

| In re: | : | CHAPTER 11 |
| --- | --- | --- |
| MIDWEST OIL OF MINNESOTA, LLC, | : | NO. |
| Debtor. | : | |

| In re: | : | CHAPTER 11 |
| --- | --- | --- |
| MIDWEST PROPERTIES OF SHAWANO, LLC, | : | NO. |
| Debtor. | : | |

| In re: | : | CHAPTER 11 |
| --- | --- | --- |
| MIDWEST HOTELS & MOTELS OF SHAWANO, LLC, | : | NO. |
| Debtor. | : | |

# DEBTORS' MOTION FOR THE ENTRY OF AN ORDER PURSUANT TO SECTIONS 361 AND 363 OF THE BANKRUPTCY CODE AUTHORIZING INTERIM AND PERMANENT USE OF CASH COLLATERAL AND GRANTING ADEQUATE PROTECTION

U.S. Acquisitions & Oil, Inc. ("USA&O"), and its debtor affiliates (collectively the "Debtors"), through its attorneys, Cohen, Seglias, Pallas, Greenhall & Furman, PC, hereby move this Court for the entry of an Order authorizing interim and permanent use of cash collateral, and granting adequate protection pursuant to Title 11, Chapter 11 of the United States Code (the "Bankruptcy Code"), §§ 361 and 363 (the "Motion"), and Rule 4001-2 of the Local Rules of Bankruptcy for the District of Delaware (the "Local Rules"). In support of this Motion, the Debtors respectfully aver as follows:

## JURISDICTION

1. This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b). The statutory predicates for relief sought herein are §§ 105 and 345 of Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code"), as well as Rule 2015-2 of the Local Rules of Bankruptcy for the District of Delaware (the "Local Rules"). This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

## BACKGROUND

2. On March 16, 2009 (the "Petition Date"), the Debtors filed their petitions herein pursuant to Chapter 11 of the Bankruptcy Code. On the Petition Date, the Debtors moved for the joint administration of their bankruptcy matters.

3. The Debtors each filed a voluntary petition for relief under Chapter 11 of the United States Bankruptcy Code. The Debtors are in possession of their assets and are operating

their business as a debtor-in-possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code.

4.	No trustee or examiner has been requested or appointed in this case and no creditor's committee has yet been established in this case.

5.	The events leading up to the Petition Date, as well as the facts and circumstances supporting the relief requested therein, are set forth in the Affidavit of Naomi Isaacson in Support of the First Day Motions (the "Affidavit"), filed contemporaneously herewith and incorporated herein by reference.

6.	The Debtors are Delaware limited liability companies and Delaware corporations with a principal place of business in Shawano, Wisconsin, which operates property acquisition and management, sales of gasoline and petroleum products, and funding for charitable activities.

7.	Due to Debtors' dynamic approach to business and Debtors' diverse business holdings, in the early years Debtors' businesses boomed and flourished. Since then, the Debtors have experienced a material degradation of its operations, resulting from intentional business interference, organized negative publicity, and the general economic downturn in the United States. Then in October 2008, Debtors were approached by an investor from Canada who was going to lend Debtors $10 million. As part of the deal, Debtors had to pay a significant advance fee. Debtors paid said fee on October 28, 2008. Unfortunately, it turned out to be worse than a scam and Debtors lost the advance fee. This incident started possibly the worst publicity imaginable which obviously has affected our businesses and our loan relationships.

8.	Given their current financial situation, the Debtors concluded that it was in the best interest of their creditors and vendors to seek relief under Chapter 11 of the United States Bankruptcy Code.

9. The Debtors intend to finance their ongoing business operations through a combination of the use of cash collateral to be provided by Nicolet National Bank ("Nicolet"), Vermillion State Bank ("Vermillion"), and/ or First Integrity Bank ("First Integrity") (collectively, the "Lender"), and income from their businesses.

**RELIEF REQUESTED**

10. The statutory predicates for the relief requested herein are §§ 105, 361, and 363 of the Bankruptcy Code, Federal Rule of Bankruptcy Procedure ("Federal Rule") 4001, and Local Rule 4001-2. For purposes of this Motion, the relief requested herein is intended to apply for the period after the filing date.

11. The Debtors request authority to finance their ongoing business operations through the use of Cash Collateral, as that term is defined in § 363 of the Bankruptcy Code, and the grant of adequate protection to a creditor that may assert an interest in said Cash Collateral. The first order for interim relief would approve the use of the Cash Collateral and the proposed adequate protection on a preliminary basis and schedule a final hearing for the relief sought by this Motion. At the conclusion of the final hearing, the Debtors intend to request the entry of a further order, substantially in the form attached to this Motion, authorizing the use of Cash Collateral and granting adequate protection on a final basis.

12. One of the Debtors' more pressing concerns is the need for immediate use of Cash Collateral on an interim basis pending a final hearing. Federal Rule of Bankruptcy Procedure ("Federal Rule") 4001(b) provides that a final hearing on a motion to use cash collateral pursuant to § 363 of the Bankruptcy Rules may not commence earlier than 15 days after service of such motion. Upon request, however, a court is empowered to conduct a preliminary hearing on the

motion and authorize the restricted use of cash collateral to the extent necessary to avoid immediate and irreparable damage to a debtor's estate.

13. The Debtors require the use of the Cash Collateral to pay present operating expenses, including vendors, to ensure a continued supply of goods and services essential to the Debtors' ongoing viability. The Debtors face a dire and immediate cash crunch which, if not alleviated in the most rapid manner possible, will cause it to cease operations.

14. The Debtors' ordinary course of business generates Cash Collateral through the sale of oil and petroleum products, as well as through rental of real property. The Lenders assert a security interest in some or all of the Debtors' Cash Collateral. In addition, it is possible that other entities may assert a lien on the Debtors' Cash Collateral.

15. The Debtors require the use of Cash Collateral to meet expenses and maintain the operation of their businesses. Without the use of Cash Collateral, the Debtors' operations will be substantially and irreparably harmed.

## ADEQUATE PROTECTION

16. Pursuant to § 363(e) of the Bankruptcy Code, the Lenders are entitled to adequate protection of its interest in collateral relating to the diminution in value (if any) arising from the Debtor's use of the Cash Collateral, as well as for the sale, use, or lease of the collateral (other than Cash Collateral) and the decline (if any) of the value of the collateral resulting from the imposition of the automatic stay. To the extent that the Lenders have a valid interest in the Debtors' Cash Collateral, they are entitled to the same protection.

17. What constitutes adequate protection is determined on a case-by-case basis. *See* In re O'Connor, 808 F.2d 1393, 1396 (10th Cir. 1987). The focus of this requirement is to

protect a secured value from the diminution of the value of its interest in collateral during the period of use. *See* In re Beker Indus. Corp., 58 B.R. 725, 736 (Bankr. S.D.N.Y. 1986).

18.  The Debtors believe, and therefore aver, that the Lenders, to the extent it has/they have a valid interest in the Debtors' Cash Collateral, are adequately protected for any Cash Collateral that the Debtors will use by virtue of the preservation of the going concern value of the estate. However, as adequate protection for any interest in Cash Collateral which the Lenders may hold, the Debtors are willing to grant these parties replacement liens in the Debtors' post-petition Cash Collateral, to the same extent, priority, and validity as their respective pre-petition liens, if any, and only to the extent that the Debtors diminish such Cash Collateral. The proposed replacement liens in and of themselves will provide sufficient adequate protection to prevent any diminution in value.

19.  In order to avoid immediate and irreparable harm to the Debtors' estates pending a final hearing on this Motion, the Debtors require the interim use of Cash Collateral for approximately a four week period to pay, among other things, utilities, vendors, suppliers, taxes, insurance, and other ordinary business costs and expenses in accordance with its proposed budget (with allowance for an aggregate 10% overage). The Debtors' proposed budget for the use of Cash Collateral is attached hereto as "Exhibit A."

20.  The Cash Collateral proposed to be used by the Debtors will be generated from the continued operation of the Debtors' businesses and the collection of accounts receivable.

21.  Section 363(c)(2) provides, *inter alia*, that cash collateral may not be sold, used, or leased unless "(A) each entity that has an interest in such cash collateral consents; or (B) the court, after notice and a hearing, authorizes such use, sale, or lease . . ." 11 U.S.C. § 363(c)(2).

In the event that the Lenders do not consent to the Debtors' use of Cash Collateral, the Debtors nevertheless request that the Court authorize the use of Cash Collateral over any such objections.

22. The Debtors need immediate authority to use Cash Collateral to fund their day-to-day operations. In sum, the authorization to use the Cash Collateral will preserve the going concern value of the Debtors and is in the best interests of all stakeholders.

## **NOTICE**

23. Notice of this Motion has been provided to (a) the Office of the United States Trustee; (b) the creditors holding the 20 largest unsecured claims; and (c) Nicolet National Bank, Vermillion State Bank, and/ or First Integrity Bank. As the Debtors are seeking the relief in this Motion as part of its first day motions, notice of this Motion and any order thereon shall be served as required by Local Rule 9013-1(m). The Debtors submit that such notice is proper under the circumstances and that no other or further notice is necessary.

24. No previous motion for the relief sought herein has been made by the Debtors to this or any other Court.

WHEREFORE, for the foregoing reasons, the Debtors respectfully request that this Court enter an Order, in the form attached, authorizing the Debtors' use of Cash Collateral on an emergency interim basis and, following a final hearing on this Motion, authorizing the Debtors to utilize Cash Collateral on a permanent basis without further order of Court, and granting such other relief as the Court may deem appropriate.

                                            COHEN, SEGLIAS, PALLAS,
                                                 GREENHALL & FURMAN, P.C.

BY:    */s/Eric J. Monzo*
        Eric John Monzo
        Delaware ID No. 5214
        Nemours Building
        1007 Orange Street, Suite 1130
        Wilmington, DE 19801
        Tel: 302.425.5089
        Facsimile: 302.425.5097

        emonzo@cohenseglias.com
        *Proposed Attorneys for the Debtor*

Dated: March 16, 2009

Steven D. Usdin, Esquire
PA ID No. 36381
30 South 17th Street, 19th Floor
Philadelphia, PA 19103
*Proposed Attorneys for the Debtor*